# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re Invent Resources, Inc. ) | |
| ) | |
| Urszula Hed, Executrix ) | |
| Appellant, ) | Civ. Act. No. 13-12964-TSH |
| ) | |
| v. ) | Bankruptcy Chapter 7 |
| Harold Murphy, Chapter 7 Trustee ) | Case No. 10-14056-JNF |
| Murphy & King, P.C. ) | |
| Appellees. ) | |

## ORDER ON APPEAL FROM BANKRUPTCY COURT
### September 29, 2014

**HILLMAN, D.J.**

### Nature of the Proceeding

This is an appeal from decisions in three orders of the United States Bankruptcy Court for the District of Massachusetts, in which the Bankruptcy Court approved payments of a trustee commission and certain legal fees to Appellees, and rejected Appellant's motion to recuse the Bankruptcy Judge.

### Background

Invent Resources ("Invent"), is a Massachusetts corporation founded in 1997 by Sol Aisenberg, George Freedman, Richard Pavelle, and Ze'ev Hed ("the Founders"). The purpose of the company was to develop, license, and sell inventions or intellectual property. In 2008, Ze'ev Hed passed away and was survived by his wife, Urszula Hed ("Hed"), who succeeded to her husband's interests as executrix of his estate. Hed is the Appellant.

Bankruptcy proceedings commenced on April 15, 2010, when Aisenberg and Freedman filed an involuntary petition under Chapter 7 of the Bankruptcy Code. Bankruptcy Judge Joan N. Feeney was assigned to the case. When no party answered the involuntary petition, an order for relief entered on May 14, 2010. On May 17, 2010, Attorney Harold Murphy ("Murphy") was appointed the trustee of Invent's bankruptcy estate. The Bankruptcy Court approved Murphy's retention of his law firm, Murphy & King, P.C., to perform legal work related to his trustee duties. Murphy & King, P.C., together with Murphy as an individual, are the Appellees.

Upon his appointment as trustee, Murphy examined the operating history, assets and liabilities of Invent and investigated the company's interest in certain intellectual property, including claims for royalties owed to Invent by Excel Dryer, Inc. ("Excel"). Invent had executed a licensing agreement with Excel, in which Invent and the Founders licensed two patents to Excel in exchange for quarterly royalty payments. Excel had ceased making the royalty payments, and Murphy's investigation showed that royalties of approximately $700,000 were due to Invent and the Founders through the first quarter of 2011. Through arbitration, Murphy and Excel reached an agreement that Excel would purchase the intellectual property and pay royalties past due in the sum of $2,389,345. That sale was approved by the Bankruptcy Court on January 25, 2012.

During Murphy's investigation and the arbitration process with Excel, the Founders and Hed asserted that they were the true owners of the patents and that Invent's bankruptcy estate had no interest in the royalties or sale of the intellectual property.[1] In light of this dispute the Bankruptcy Court directed Murphy, on July 25, 2011, to file an adversary proceeding within 30

---

[1] With approval from the Bankruptcy Court, Murphy executed the sale of the intellectual property to Excel free and clear of the Founders' claims to and interests in the patents, pursuant to §§ 363(f)(2) and (f)(4) of the Bankruptcy Code. Those sections provide that "the trustee may sell property [of the bankruptcy estate] free and clear of any interest in such property of an entity other than the estate, only if . . . (2) such entity consents; . . . or (4) such interest is in bona fide dispute."

days to obtain a declaratory judgment regarding the rights of Invent, the Founders, and Hed in the intellectual property. *See* Bankruptcy Court Docket, *In re Invent Resources, Inc.*, Case No. 10-14056-JNF, Docket No. 85. Pursuant to the court order, Murphy filed the adversary proceeding on August 24, 2011. *See* Bankruptcy Court Docket, No. 95.

Also during this time, Hed filed a claim against Invent's bankruptcy estate for $234,750 in unpaid wages owed to her deceased husband. Murphy filed an objection to that claim on December 20, 2011. *See* Bankruptcy Court Docket, No. 111. The court issued a pretrial order setting a discovery schedule and deadline for dispositive motions related to the claim. *See* Bankruptcy Court Docket, No. 148.

Murphy, the Founders, and Hed continued to negotiate regarding their respective rights to the intellectual property and Hed's claim for unpaid wages. In light of these negotiations, Murphy and Hed filed joint motions to extend the deadline for dispositive motions on Hed's unpaid wages claim, and a new deadline was set by the court for May 14, 2012. *See* Bankruptcy Court Docket, No. 160. Unable to reach an agreement by that date, Murphy filed a motion for summary judgment. *See* Bankruptcy Court Docket, No. 162. On July 2, 2012, Hed filed an opposition to Murphy's motion for summary judgment. *See* Bankruptcy Court Docket, No. 174. At the summary judgment hearing on July 9, however, Murphy and Hed reported to the Bankruptcy Court that the parties had finally reached an agreement with respect to the parties' rights in the intellectual property and Hed's claim for unpaid wages.[2] *See* Bankruptcy Court Docket, No. 175.

---

[2] The settlement agreement was approved by the Bankruptcy Court on September 19, 2012. (Bankruptcy Court Docket, No. 202). The agreement provided that each of the three remaining Founders, Hed, and the bankruptcy estate would receive a twenty percent share of the Excel funds; and that Hed's claim for unpaid wages would be allowed in the reduced amount of $70,000. (Bankruptcy Court Docket, No. 177).

### *Approval of the Trustee Commission and Legal Fees*

Following the settlement, Murphy filed a First Interim Application for Compensation, seeking approval of a $50,000 trustee commission and reimbursement for legal services provided by his law firm under 11 U.S.C. §§ 326, 328, 330, 331. Over Hed's objection, the Bankruptcy Court approved the application, setting out its reasoning in a memorandum dated November 5, 2012 ("the November Memorandum"). Bankruptcy Court Docket, No. 215. Murphy filed a second and final application for compensation on July 17, 2013, seeking approval for an additional $10,000 trustee commission (bringing the total commission to $60,000) and additional legal fees. Hed again objected. The Bankruptcy Court, in an order dated November 12, 2013 ("the Final Fee Order"), approved Murphy's compensation. *See* Bankruptcy Court Docket, No. 251.

Following entry of the Final Fee Order, Hed noticed an appeal in this Court in November 2013. On May 12, 2014, Hed filed an emergency motion to stay the appeal based on a newly discovered email that allegedly showed the parties had settled Hed's claim for unpaid wages prior to Murphy's motion for summary judgment. Hed asserted that this evidence proved that Murphy's motion was unnecessary, and therefore might persuade the Bankruptcy Judge to reverse the decision approving those legal fees. This Court granted the emergency motion, remanding to the Bankruptcy Court for consideration of the evidence. The Bankruptcy Court held a hearing on June 23, 2014 to consider Hed's motion for relief from the previous judgment. However, the Bankruptcy Court denied the motion in an order dated June 26, 2014 ("the Reconsideration Order"), confirming its prior approval of the legal fees. *See* Bankruptcy Court Docket, No. 295.

*Motion to Recuse*

On September 18, 2013, before the Bankruptcy Court approved Murphy's final application for compensation but after the court had approved the interim application, Hed filed a motion to recuse Bankruptcy Judge Feeney. Hed's motion cited the fact that Judge Feeney and Murphy were partners at the law firm Hanify & King from 1986 to 1992, that Judge Feeney approved payment of certain legal fees related to the Invent bankruptcy to Murphy's law firm, and that in 2011, Murphy's colleague stated to Hed, prior to a hearing before Judge Feeney, "when we come in front of this court we have the full expectation of getting what we ask for." Bankruptcy Court Docket, No. 232. The Bankruptcy Court denied the motion. *See* Bankruptcy Court Docket, No. 240.

## **Discussion**

Hed raises five claims on appeal: 1) $29,837.50 in legal fees related to the adversarial proceeding were erroneously awarded because the adversarial proceeding was unnecessary for the administration of the case; 2) $5,642.50 in legal fees related to the summary judgment motion were erroneously awarded because the motion was unnecessary to the administration of the case; 3) 130.2 hours of legal fees were erroneously awarded because the trustee's application for compensation did not properly demarcate trustee services from legal services; 4) the trustee commission was erroneously calculated based on the $2,389,345 obtained from the sale of the intellectual property to Excel because the bankruptcy estate was entitled to only one-fifth of those funds; and 5) the Bankruptcy Court erred in denying Hed's motion to recuse because Judge Feeney's appearance of impartiality in the case was reasonably questionable.

## Standard of Review

Where a party has filed objections to the bankruptcy court's proposed findings of fact and conclusions of law, this Court reviews rulings of law *de novo* and findings of fact for clear error. *See In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir. 1992). Accordingly, "[a] court reviewing a decision of the bankruptcy court may not set aside findings of fact unless they are clearly erroneous, giving 'due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses.'" *Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997) (internal citations omitted).

"A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (internal citation omitted). When a reviewing court "scrutinize[s] factual determinations and discretionary judgments made by a bankruptcy judge . . . considerable deference [is given] to the bankruptcy court:

> 'Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters and in regard to the terms and conditions of the engagement of professionals.... The bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails.'"

*In re DN Assoc.*, 3 F.3d 512, 515 (1st Cir. 1993) (internal citation omitted). "The bankruptcy court's legal conclusions, drawn from the facts so found, are reviewed *de novo*." *Palmacci*, 121 F.3d at 785.

### *Whether the Bankruptcy Court Erred By Approving the Contested Legal Fees*

Each of Hed's arguments regarding the legal fees were raised below and addressed by the Bankruptcy Court. I agree with Judge Feeney's evaluation of those claims, as summarized below.

#### *Legal Fees Related to the Adversary Proceeding*

Hed argues that the legal fees related to the adversary proceeding should not be awarded because the adversary proceeding was unnecessary to the administration of the case. Hed alleges that the ultimate settlement of the adversary proceeding—in which the bankruptcy estate, the three surviving Founders, and Hed received equal 20% shares of the Excel funds—was identical to an offer made by Hed prior to the adversary proceeding. The Bankruptcy Court, addressing the same argument in the Final Fee Order, found that the proceeding was necessary because the parties in fact vigorously disputed their respective rights in the intellectual property. Hed had argued for most of the case that the bankruptcy estate had no interest in the intellectual property sold to Excel and that the three surviving Founders and Hed were entitled to 25% each. *Final Fee Order* at 9. The impasse led the Bankruptcy Court to *order* Murphy to file the adversary proceeding to determine the rights of the parties in the intellectual property. *Id.* Therefore the adversary proceeding was necessary and the associated legal fees were compensable. *Id.*

#### *Legal Fees Related to the Summary Judgment Motion*

Hed also asserts that the summary judgment motion was unnecessary because the parties had reached an agreement at the time it was filed. The Bankruptcy Court rejected this argument. On remand from this Court for consideration of new evidence on this claim, Hed argued that a newly discovered email established that the parties had reached a settlement agreement on April 27, 2012, and therefore Murphy's motion for summary judgment on Hed's unpaid wages claim, filed on May 14, 2012, was unnecessary. The Bankruptcy Court examined the email and found it

was a mere settlement offer, not an agreement. *Reconsideration Order* at 6. The court observed that the notion a settlement had been reached on April 27, 2012 was belied by the fact that Hed filed an opposition to Murphy's summary judgment motion on July 2, 2012. *Id*. Since no settlement agreement had been reached by the deadline for dispositive motions, Murphy's motion for summary judgment was not unnecessary and the associated legal fees were compensable. *Id.*

*Demarcation of Legal Services from Trustee Services*

Hed argues that Murphy did not meet his burden under 11 U.S.C. § 327 to clearly distinguish trustee services from attorney services in his application for compensation. The Bankruptcy Court's November Memorandum, which was fully incorporated in the court's Final Fee Order, rejected this claim. The court observed that the application for compensation included a "comprehensive and detailed narrative of services performed, as well as an itemized breakdown containing a description of services provided by the Trustee and counsel to the Trustee." *November Memorandum* at 6. Time entries for services performed as trustee were clearly listed in Exhibit B to the interim application, and were differentiated from the time entries for services performed as attorneys, which were set forth on Exhibit D. *Id.* at 9-10. The Court found that Hed's contention regarding Murphy's record keeping was without merit because Murphy appropriately staffed, managed, and attended to legal matters as detailed in the application. *Id*.

I have reviewed the parties' submissions with respect to: (1) the legal fees related to the adversary proceeding; (2) the legal fees related to the motion for summary judgment; and (3) the demarcation of legal and trustee services. For each of these claims, I agree with the Bankruptcy Court's reasoning as set forth in the Final Fee Order (incorporating the November Memorandum), and the Reconsideration Order. I find that Hed has failed to establish that the

Bankruptcy Court's factual findings were clearly erroneous. Further, I find that the Bankruptcy Court committed no errors of law. Therefore, Hed's challenges to the Bankruptcy Court's approval of legal fees are denied.

### *Whether the Bankruptcy Court Erred By Approving the Trustee Commission*

Hed asserted below that Murphy's trustee commission under 11 U.S.C. § 326 was improperly calculated because the commission was based on an amount that included non-qualifying funds. Specifically, Hed challenged the inclusion of certain payments made by Murphy to his accountants and attorneys. *See Hed's Partial Opposition to First Interim Application*, Bankruptcy Court Docket, No. 295. Applying the presumption of reasonableness of a trustee's commission as described in *In re Salgado-Nava*, 473 B.R. 911, 921 (B.A.P. 9th Cir. 2012) ("[A]bsent extraordinary circumstances, bankruptcy courts should approve chapter 7, 12, and 13 trustee fees without any significant additional review"), the Bankruptcy Court approved the commission sought by Murphy, which was based on the total proceeds from the sale of intellectual property to Excel. On appeal, Hed's argument is different. Hed now argues that it was error to approve the commission based on the $2.4 million sale price of the intellectual property. According to Hed, the commission should have been calculated out of one-fifth that amount, because the bankruptcy estate—pursuant to the settlement agreement that resolved the adversary proceeding—was only entitled to 20% of the monies from Excel.

The Bankruptcy Code provides that a court may allow reasonable compensation in the form of a trustee commission, based on a percentage of "all moneys disbursed or turned over in the case by the trustee to parties in interest." 11 U.S.C. § 326(a). The question, then, is whether the $2.4 million was "disbursed or turned over" by Murphy in the bankruptcy case. Hed's argument seems to be that because the ownership of the intellectual property was the subject of a

9

settlement agreement in which Invent only retained a 20% interest, only 20% of the Excel sale price counts as "moneys disbursed or turned over in the case." Hed cites no authority for this claim.

To the contrary, significant authority holds otherwise. *Collier on Bankruptcy* provides that when a trustee sells estate property co-owned with a non-debtor, the crucial test for calculating the trustee commission is "whether the particular property has been justifiably administered during the bankruptcy case and whether the trustee has properly performed services in relation to that property." 3 COLLIER ON BANKRUPTCY ¶ 326.02[1][f][iii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also In re Blair*, 329 B.R. 358, *3, 2005 WL 2009303 (B.A.P. 9th Cir. June 20, 2005) (adopting the *Collier* test). In *In re Aho*, the Bankruptcy Court for the Northern District of California rejected the argument that a trustee may not, in calculating the commission, include the share of sale proceeds owned by parties other than the debtor. No. 05-14608, 2013 WL 6133944 at *1 (Bankr. N.D. Cal. Nov. 21, 2013). The court held that the 326(a) commission should be calculated without reference to the source of funds disbursed, because no matter how the monies entered the trustee's control, they were nonetheless disbursed by the trustee. *Id*. The court emphasized that without the considerable expertise and effort of the trustee, the sale of the estate property would not have occurred; under such circumstances, all disbursements should be considered in calculating the commission. *Id.* Other courts have arrived at the same conclusion.[3] *See In re Rybka*, 339 B.R. 464 (2006) (holding that a commission based on the total sale proceeds of property co-owned by the debtor and her sister was properly

---

[3] At least one Bankruptcy Court has found that the language of 11 U.S.C. § 363(j), which directs a trustee to distribute to co-owners proceeds from a sale "not including any compensation of the trustee," suggests that a co-owner's distribution must be excluded from the trustee's commission calculation. *See In re Eidson*, 481 B.R. 380 (2012). However, § 363(j) applies only to sales of property under subsection (g) and (h) of § 363. The sale of the intellectual property by Murphy was made under subsection (f), and therefore any limiting language of § 363(j) does not control.

10

calculated); *In re Schautz* 390 F.2d 797 (2d Cir. 1968) (holding that where the joint tenant of the debtor consented to the sale of the property, the trustee was entitled to a commission based on the total sale proceeds notwithstanding the fact that part of the proceeds went to the joint tenant).

Applying this rationale, I find that Murphy appropriately calculated the trustee commission based on the total proceeds of the sale of the intellectual property. The sale was authorized by the Bankruptcy Court, free and clear of the asserted interests of the Founders and Hed, pursuant to § 363(f)(2) and § 363(f)(4) of the Bankruptcy Code. The proceeds of the sale came under Murphy's control as trustee. Murphy distributed those proceeds in accordance with the settlement agreement reached between the Founders, Hed, and the bankruptcy estate. Without Murphy's considerable efforts in negotiation and arbitration with Excel, the funds likely would have never reached the Founders and Hed. This property was justifiably administered in the case and Murphy properly performed his trustee services in relation to that property. Thus, the $2.4 million was "disbursed or turned over" by the trustee in this case. Therefore, I find that the Bankruptcy Court did not err in approving the trustee commission.

### *Whether the Bankruptcy Court Erred By Denying Hed's Motion to Recuse*

Judge Feeney denied Hed's motion for recusal without significant discussion. The order, in full, reads:

> A hearing is unnecessary with respect to this Motion. The motion is denied. This Court's impartiality cannot be reasonably questioned regardless of improvident remarks made by counsel to the trustee in 2011.

Bankruptcy Court Docket, No. 240.

I find that this decision was not erroneous. Federal Rule of Bankruptcy Procedure 5004(a) provides that disqualification of a bankruptcy judge shall be governed by 28 U.S.C. § 455, which in turn requires recusal where the judge's "impartiality might reasonably be

questioned," s*ee* 28 U.S.C. § 455(a), and where the judge actually "has a personal bias or prejudice concerning a party." *See* 28 U.S.C. § 455(b)(1). Under § 455(a) "disqualification is appropriate only if the facts provide what an objective knowledgeable member of the public would find to be a reasonable basis for doubting the judge's partiality." *U.S. v. Voccola*, 99 F.3d 37, 41 (1st Cir. 1996).

There is a threshold question of whether Hed's motion to recuse was timely. Generally, "a party must raise the recusal issue 'at the earliest moment after [acquiring] knowledge of the [relevant] facts.'" *In re U.S.*, 441 F.3d 44, 65 (1st Cir. 2006) (quoting *In re Abijoe Realty Corp.,* 943 F.2d 121, 126 (1st Cir. 1991)). This requirement allows courts to "reject what appear to be strategic motions to recuse a judge whose rulings have gone against the party." *Id.* In support of recusal, Hed cites the following facts: 1) Judge Feeney had a professional relationship with Murphy while they were employed at the law firm Hanify & King from 1987-1992; 2) Murphy's colleague Daniel Lyne stated to Hed in 2011, prior to a hearing before Judge Feeney, that "when we come in front of this court we have the full expectation of getting what we ask for;" and 3) Judge Feeney ruled in favor of Murphy with respect to the trustee commission and the legal fees.

Hed filed the recusal motion on September 18, 2013, more than three years after the bankruptcy proceeding began and Judge Feeney was assigned to the matter. That Judge Feeney is a former colleague of Murphy was a matter of public knowledge available to Hed from the outset of the case. Daniel Lyne's alleged statement was made in 2011, two years before the recusal motion. After Judge Feeney approved Murphy's fees in November 2012, more than 10 months elapsed before Hed decided to file the recusal motion. By any measure, Hed did not file the recusal motion "at the earliest moment after [acquiring] knowledge of the [relevant] facts." *In re U.S.*, 441 F.3d 44, 65 (1st Cir. 2006). *See, e.g.*, *Newport News Holdings Corp. v. Virtual City*

*Vision, Inc.*, 650 F.3d 423, 432-33 (4th Cir. 2011) (finding recusal motion untimely where moving party had knowledge of the relevant facts for five months prior to filing); *Lunde v. Helms*, 29 F.3d 367, 370 (8th Cir. 1994) (finding recusal motion untimely where party filed the motion "some seven or eight months" after the action began). Hed offers no explanation for the delay. Therefore, I find that Judge Feeney's order denying Hed's recusal motion was justified on timeliness grounds alone.

Furthermore, Hed's recusal argument is deficient on its merits. Hed invokes both § 455(a) and (b)(1), arguing that the confluence of facts surrounding the case demonstrates that Judge Feeney's appearance of impartiality was reasonably questionable and that Judge Feeney had an actual personal bias in favor of Murphy. Hed underestimates the showing necessary under the statute. "'The disqualification decision [under § 455] must reflect *not only* the need to secure public confidence through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic purposes.'" *In re Bulger*, 710 F.3d 42, 47 (1st Cir. 2013) (quoting *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (emphasis in original)). An objective observer would not doubt the court's impartiality based on the fact that Judge Feeney practiced law with Murphy *nearly 20 years before* the commencement of the Invent bankruptcy proceedings. *See Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 236 (3d Cir. 2001) (judge's affiliation with party's law firm 6 years earlier did not require recusal). Nor is Hed's claim valid that the adverse rulings made by Judge Feeney in this case are evidence of impartiality. *See U.S. v. De La Cruz*, 249 Fed. App'x. 833, 836-37 (1st Cir. 2007) ("It is settled that 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'") (quoting *Liteky v. U.S.*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

Further, the statement attributed to Daniel Lyne is not sufficient to impute an appearance of impartiality upon Judge Feeney. The statement offered by Hed—which is disputed by Mr. Lyne—does not mention Judge Feeney by name, and therefore could be read as an assertion that Mr. Lyne expects to win in *any* court, or in court generally. Hed provides no other factual support for the inference that Judge Feeney plays favorites when Murphy and his colleagues appear before her. "A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, *ex proprio vigore,* create a cloud on her impartiality." *In re U.S.*, 158 F.3d 26, 35 (1st Cir. 1998). Finally, Hed cites no authority for the contention that the "confluence" of these facts warrants recusal even if the facts individually are insufficient. That argument is rejected.

For the same reasons, Hed's assertion that recusal was required under § 455(b)(1) is denied. Because I find that Judge Feeney's appearance of impartiality cannot reasonably be questioned, I also find that she did not have an actual personal bias or prejudice concerning the parties. *See In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997) (finding discussion of plaintiffs' 455(b)(1) argument unnecessary because 455(a) "covers the same ground and reaches even further"). "[A] judge must avoid yielding in the face of unfounded insinuations." *In re U.S.*, 158 F.3d at 35. Judge Feeney was correct to do so here.

## Conclusion

The judgment of the Bankruptcy Court is ***affirmed***.

**SO ORDERED.**

*/s/ **Timothy S. Hillman***
TIMOTHY S. HILLMAN
DISTRICT JUDGE